UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

C.A. NO.  08-CV-11403-LTS

| | |
|---|---|
| FRANCO BRUNO, | ) |
|         Plaintiff, | ) |
| v. | ) |
| | ) |
| TOWN OF FRAMINGHAM, JULIAN SUSO, in his | ) |
| capacity as TOWN MANAGER OF THE TOWN OF | ) |
| FRAMINGHAM, EUGENE F. THAYER, in his capacity | ) |
| as SUPERINTENDENT OF SCHOOLS for the TOWN OF | ) |
| FRAMINGHAM, GARY DOHERTY, in his capacity as | ) |
| ATHLETIC DIRECTOR FOR FRAMINGHAM HIGH | ) |
| SCHOOL, as well as his individual capacity, MICHAEL | ) |
| WELCH, in his capacity as PRINCIPAL Of | |
| FRAMINGHAM HIGH SCHOOL, as well as individual | ) |
| capacity, ROBERT MERUSI, in his capacity as DIRECTOR | ) |
| of the  DEPARTMENT OF PARKS AND RECREATION | ) |
| for the TOWN OF FRAMINGHAM, as well as his | ) |
| individual capacity, | ) |
|         Defendants. | ) |

**DEFENDANT'S, ROBERT MERUSI, RULE 56.1 STATEMENT OF
UNDISPUTED MATERIAL FACTS AND SUPPORTING EXHIBITS
SUBMITTED IN SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT**

Pursuant to Local Rule 56.1, the defendant Robert Merusi submits this

statement of facts in support of his motion for summary judgment, with

supporting attachments.

**Statement of Undisputed Material Facts[1]**

1.     The defendant Robert Merusi is the Division Director for the Town of

Framingham and has been since 1999.  Merusi Deposition, p. 15, Exhibit 1.

---

[1]    As required under summary judgment procedure, such facts must be
interpreted in favor of the non-moving party.  In so stating undisputed material
facts, the defendant does not concede or rely on these facts for any purpose other
than this motion for summary judgment.

2.      The Division consists of five departments: Recreation, Loring Arena, Callahan Senior Center, Park Maintenance and Cemeteries.  Merusi Deposition, p. 15, Exhibit 1.

3.      As Division Director, Mr. Merusi's responsibilities include the daily management of parks for the Town, including a dozen soccer fields.  Merusi Deposition, pp. 29, 37-38, Exhibit 1; Amended Complaint, ¶ 13, Exhibit 2.

4.      The scheduling of the use of athletic fields has always been done through particular channels; namely, through the school administration and not individual coaches.  Merusi Deposition, p. 53, Exhibit 1.

5.      It was an ongoing practice of the Parks and Recreation Department to require all user groups of fields to secure any goals safely off the field for safety reasons, among others. The Parks and Recreation Department had sent memoranda reminding all user groups that goals of all kinds, including soccer goals, were to be placed well off the playing fields and locked up after each use. Memoranda were sent on August 30, 2000, September 19, 2000, May 1, 2002, April 20, 2004, and October 3, 2006.  See Correspondence dated August 30, 2000, September 19, 2000, May 1, 2002, April 20, 2004, May 19, 2004, October 3, 2006, Exhibit 3.

6.      In 2006, the Framingham High School soccer program utilized about five of the soccer fields.  Merusi Deposition, p. 38, Exhibit 1.   One of the fields used by soccer program for practice was the Winch Park facility.  Amended Complaint, ¶ 11, Exhibit 2.

7.      The Parks and Recreation Department had no role in purchasing the soccer goals used by the High School soccer program.  Merusi Deposition, pp. 38-39, Exhibit 1.

8.     It was an ongoing practice of the soccer teams, as with other teams, for the student athletes to unlock and set up the goals before practice and to remove and lock the goals up at the end of practice.  Bruno Deposition, pp. 44-45, 55, 82, Exhibit 4.

9.     In 2006, the plaintiff Franco Bruno was the coach for the Varsity Girls Soccer Team at Framingham High School.  Amended Complaint, ¶ 1, Exhibit 2. Gary Doherty, Athletic Director for Framingham High School, hired the plaintiff in the Spring of 2004.  Amended Complaint, ¶ 1, Exhibit 2; Doherty Deposition, p. 29, Exhibit 5.  Since the time of his hire, the plaintiff was aware of the ongoing practice of the athletes setting up and removing the goals at practice. Bruno Deposition, pp. 44-45, 55, 82, Exhibit 4.   The Parks and Recreation Staff was not involved in moving the goals.

10.     On October 4, 2006, Chris Brown, an employee of the Parks and Recreation Department, approached the Varsity Boys' Soccer coach at the Winch Park facility to remind him that his team was responsible for moving the soccer goals off the field at the end of practice.   Merusi Deposition, pp. 89, 92, Exhibit 1. Brown and the coach exchanged pleasantries and Brown moved on to the girls' field.  Id.

See also Email from Brown dated October 5, 2006, Exhibit 6.

11.     Mr. Brown then approached the plaintiff and offered a similar reminder. Merusi Deposition, p. 91, Exhibit 1.

12.     In response, the plaintiff verbally assaulted Mr. Brown. Merusi Deposition, pp. 99-102, Exhibit 1.  He screamed at Brown in front of the team that his players were not going to move the goals and that Brown was there to serve

him and his players and was employed by him and the players' parents who were taxpayers.  Id.; Bruno Deposition, pp. 67-68, Exhibit 4.

13.     Brown reported this incident to his boss, defendant Merusi.  Merusi Deposition, p. 86, Exhibit 1.  Brown indicated to Merusi that the plaintiff was abusive and had humiliated him. Merusi Deposition, pp. 99, 114-118, Exhibit 1. See also Email from Brown dated October 5, 2006, Exhibit 6.

14.     Merusi spoke with the boys' soccer coach who confirmed what Mr. Brown had reported and who described the situation as "brutal."  Merusi Deposition, pp. 86-87, 100, Exhibit 1.

15.     Merusi notified the School Department of the incident and asked them to investigate it.  Merusi Deposition, p. 87, Exhibit 1.

16.     The Athletic Director at the High School, Gary Doherty, and/or the Principal, Michael Welch, spoke with the plaintiff about the incident.  They instructed the plaintiff not to speak with anyone in terms of Parks and Recreation Department or about its practices or policies without speaking to them first. Welch Deposition, pp. 45-46, Exhibit 7;  Doherty Deposition, pp. 77-78, Exhibit 5; Bruno Deposition, pp. 66-67, Exhibit 4.  See also Amended Complaint, ¶¶ 5, 6, Exhibit 2.

17.     The Fall 2006 soccer season ended in December.  Bruno Deposition, p. 126, Exhibit 4.

18.      In the Spring of 2007, the plaintiff, in disregard of the instruction given him and without implementing the proper administrative channels for communications about field issues, approached Mr. Merusi and confronted him about scheduling soccer games and about the Brown incident.  Bruno Deposition,

pp. 63-65, 138-139, Exhibit 4; Email from Merusi to Commission, dated 5/12/07,

Exhibit 8.

19.     Mr. Merusi related this incident to the Parks and Recreation Commission

by email, noting that the plaintiff was loud and excitable during this incident.

Email from Merusi to Commission, dated 5/12/07, Exhibit 8.

20.     The Parks and Recreation Commission met on June 6, 2007 and

deliberated regarding the issue of the plaintiff's interactions with Parks and

Recreation staff.  According to the minutes of that meeting:

> [Merusi] said incidents of last October with the School Soccer Coach
> remain unresolved. He expressed concern of his staff having to experience
> additional abuse and humiliation as experience (sic) last year from the
> girls soccer coach. Soccer season will be on us before we know it.  He
> suggested having a member of the police department be present at any
> time the soccer coach would be present for events at Bowditch Field
> where there is a high likelihood of interaction with our staff.

Minutes from 6/6/07 Parks and Recreation Commission Meeting, Exhibit 9.

21.     After discussion, the Commission instead voted that a no trespass order

issue against the plaintiff barring him from the Bowditch complex during any

planned girls' soccer game at that facility.  Amended Complaint, ¶ 25, Exhibit 2;

Minutes from 6/6/07 Parks and Recreation Commission Meeting, Exhibit 9.

22.     The girls' soccer team played only one or two games at the Bowditch Field

during its season.  Bruno Deposition, p. 136, Exhibit 4.

23.     Mr. Merusi is not on the Commission and thus did have a vote.  Merusi

Deposition, p. 159, Exhibit 1.  Mr. Merusi at no time suggested that a no trespass

order be provided to the plaintiff for Bowditch Field.  Merusi Deposition, p. 113,

Exhibit 1.

24.     By letter of June 13, 2007, Joan Rastani, Chairman of the Parks and

Recreation Commission, informed Principal Welch of the Commission's decision.

Amended Complaint, ¶ 29, Exhibit 2; Letter from Rastani to Welch dated

6/13/07, Exhibit 10.

25.     By letter of July 10, 2007, Mr. Welch requested a meeting to discuss the

Commission's action.  Amended Complaint, ¶ 30, Exhibit 2.

26.     The Commission set the matter down for the next scheduled meeting on

August 1, 2007.  Mr. Welch could not attend that meeting.  Amended Complaint,

¶ 30, Exhibit 2; Welch Deposition, pp. 87-88, Exhibit 7.

27.     At the August 1, 2007 meeting, the Commission voted to reaffirm the no

trespass order.  Amended Complaint, ¶ 31, Exhibit 2.

28.     By letter dated August 20, 2007, the Parks and Recreation Commission

informed the plaintiff of its vote to exclude him from Bowditch Field on

September 15, 2007 and other future girls' soccer events.  Amended Complaint,

¶ 31, Exhibit 2; Bruno Deposition, p. 71, Exhibit 4.

29.     After receipt of this letter, the plaintiff spoke with Athletic Director

Doherty and told him he wanted the matter over with.  Bruno Deposition, pp. 75-

79, Exhibit 4; Doherty Deposition, pp. 122-124, Exhibit 5.  The plaintiff agreed to

accept a one game suspension as a sanction for his actions.  Bruno Deposition,

pp. 77, 79-80, Exhibit 4.

30.     With the plaintiff's knowledge and consent, Mr. Doherty sent a letter to

the Commission dated September 10, 2007, detailing the School Department's

actions regarding the plaintiff. Amended Complaint, ¶ 33, Exhibit 2.

31.     Thereafter, the Parks and Recreation Commission rescinded the no trespass order.  Amended Complaint, ¶ 36, Exhibit 2.

32.     The plaintiff served the one-game suspension on September 15, 2007. Bruno Deposition, p. 88, Exhibit 4.   Bruno resumed coaching after this suspension.

33.     Bruno thereafter engaged in other conduct, pertaining to discussions with the media, that resulted in the School suspending him for the first four games of the 2008 girls' soccer season. Amended Complaint, ¶¶ 38, 39, Exhibit 2.

34.     By letter of December 1, 2007, the plaintiff resigned as coach.  Bruno Deposition, pp. 107-108, Exhibit 4.

Respectfully submitted,
The Defendant,
By his attorneys,

/s/ Leonard H. Kesten
Leonard H. Kesten,  BB0#542042
Deidre Brennan Regan, BBO #552432
**BRODY, HARDOON, PERKINS & KESTEN, LLP**
One Exeter Plaza, 12th Floor
Boston, MA  02116
(617) 880-7100
lkesten@bhpklaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that this document was filed through the ECF system and will therefore be sent electronically to the registered participants as identified on the Notice of Electric Filing (NEF) and paper copies will be sent this day to those participants indicated as non-registered participants.

/s/ Leonard H. Kesten
Leonard H. Kesten, BBO No. 542042

Dated:  August 10, 2009